RENDERED: JULY 17, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0431-MR

LIANNA NGUYEN AND LIANNA'S
NAIL ACADEMY, LLC                                                    APPELLANTS


                          APPEAL FROM BOONE CIRCUIT COURT
v.              HONORABLE JAMES R. SCHRAND, II, JUDGE
                          ACTION NO. 24-CI-01535


CHRISTOPHER D. HUNT                                                      APPELLEE


                                      OPINION
                          REVERSING AND REMANDING

                            ** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND MOYNAHAN, JUDGES.

CALDWELL, JUDGE: Lianna Nguyen ("Nguyen") and Lianna's Nail Academy,

LLC ("Lianna's") appeal the Boone Circuit Court's denial of their motion, filed

pursuant to Kentucky's version of the Uniform Public Expression Protection Act

("UPEPA"), KRS[1] 454.460–454.478, to dismiss defamation and vicarious liability

---

[1] Kentucky Revised Statutes.

claims asserted against them by Christopher D. Hunt ("Hunt"). We reverse and remand.

## BACKGROUND

Hunt, a Kentucky attorney, filed a complaint in the Boone Circuit Court ("circuit court") in September of 2024, asserting claims of defamation and "defamation by implication" against Nguyen, a nail technician licensed in Kentucky and the operator of Lianna's, a cosmetology school located in Florence, Kentucky, which specializes in the training of nail technicians. The complaint additionally asserted a vicarious liability claim against Lianna's.

Hunt asserted in his complaint that he had served as General Counsel for the Kentucky Board of Cosmetology ("the KBC") from August 16, 2021, to April 15, 2024. Additionally, the complaint alleged that "[d]uring the course of his employment with the KBC, [Hunt's] responsibilities, *inter alia*, included providing legal advice to the appointed board members in their official capacities." Record on Appeal ("R."), p. 6.

The complaint provided as background an allegation that "at various times, individuals associated with nail salon schools and/or nail salons within the Commonwealth of Kentucky have engaged in advocacy relating to the alteration of statutes and regulations relating to the KBC." R. at 6. The complaint further alleged that "Nguyen . . . beginning in August of 2023, began publishing multiple

-2-

statements advocating for legislative action as well as various other commentary[.]" *Id*. at 7. At some point "[d]uring the course of said communications," the complaint alleged, "Nguyen knowingly made false, defamatory, and defamatory per se statements about Defendant Hunt." *Id*. at 7. According to his complaint, Nguyen's publication of these statements caused Hunt to suffer emotional harm, loss of business opportunities, and financial damages.

Attached to Hunt's complaint were four exhibits. Three of the exhibits were photocopies of Facebook posts by Nguyen. The first and earliest was dated October 17, 2023. There, Nguyen had "shared" a social media post also dated October 17, 2023, from Shay McAlister, a television reporter in Louisville, Kentucky. Above the link to McAlister's post, Nguyen inserted multiple paragraphs of text which filled two pages of the printed exhibit. Immediately below the close of the post, Nguyen added a "comment" that provided a link to a petition on the website Change.org, which called for the removal of the then-current director of the KDC.

The text in Nguyen's post was sharply critical of the KBC and alleged that ongoing abusive practices toward small schools and nail salons had become widespread following the appointment of the then-current director in 2017. The text contained allegations of "official misconduct" and "abuse of power" on the part of specific members of the KBC, including Hunt.

The text included the following statements with reference or relevance to Hunt:

The Board employees have complete disregard for the licensees, act unethically, and have attacked the working class. Furthermore, the Board attorney lies to authorities, and gets a six figure salary to keep them protected . . . .

It is our opinion that these individuals are controlling fair commerce and business in the industry through manipulation of statutes and regulations, unfair and unreasonable fines, favoritism, discrimination, and classism . . . .

These individuals attempted to control medspa activities via defunk (*sic*) House bill 340, and are introducing legal activities into the criminal courts, using false declarations, which is a crime . . . .

They violate 13b regarding hearings, only inspect the smaller schools and salons, fining them heavily, and we have documentation of premeditated conspiracy against rights Hunt refuses to give open records request, and they are using company vehicles for personal use . . . .

Hunt will put straight lies in paperwork to revoke a license, and know the truth, which is legal malpractice and maleficence . . . .

Hunt denies hearings and due process, refuses [open records requests], and breaks many laws . . . .

Hunt lies to decision makers and is prosecuting licensees with no judicial authority . . . .

Licensees cannot attend hearings, so they have to pay fines because Hunt refuses hearings, but lies in committee meetings saying they welcome hearings . . . .

-4-

They will lie to decision makers and are prosecuting licensees with no judicial authority . . . .

Full time attorney with high salary encourages misconduct and creates major legal issues. No other Board employs an attorney with a full time salary. It's a conflict of interest and his salary provides incentive for lying in paperwork to support excessive fines and use his law license to prevent due process and fair rights to citizens . . . .

Hunt will put straight lies in paperwork to revoke a license, and know the truth, which is legal malpractice and malfeasance . . . .

R. at 11–12.

The second exhibit was another social media post Nguyen published on her Facebook page, dated October 18, 2023. This post linked a different post by McAlister which appeared to contain video of McAlister on WHAS11 news. Above the link to the post by McAlister, Nguyen again posted the same text which appeared in the prior exhibit. Also, below the closing of the post, Nguyen again linked to a petition on the website Change.org, calling for the removal of the director.

The third exhibit was another Facebook post by Nguyen, dated November 6, 2023. This post linked to another petition on Change.org, calling for "Transparency and Supervision of the Kentucky Board of Cosmetology[.]" R. at 19. Above the link to the petition, Nguyen posted text which discussed a meeting of the KBC. The post was critical of the responses of KBC members in reaction to

proposed reform measures. Hunt was not mentioned by name in the text posted by Nguyen, although there was a reference to a counterproposal made by "[t]he board's full time lawyer[.]" R. at 18.

The fourth exhibit was a single page that appeared to be from a photocopy of a partial Facebook post but did not display an identity for any account or a date indicating when it was published. The post appeared to link to a video titled "Justice For Kentucky Beauty Industry" and contained text that referenced an increase in fines levied by the KBC during the course of Hunt's employment with the Board. R. at 21.

After being served with the complaint, Nguyen filed a motion requesting leave of court to file a motion to dismiss pursuant to Kentucky's version of the Uniform Public Expression Protection Act, KRS 454.460–454.478. Hunt filed a response requesting that the circuit court deny Nguyen's motion. The response requested, in the event the circuit court granted the motion, an opportunity for Hunt to conduct limited discovery. Hunt contended it was "necessary to determine the contents of Defendant Nguyen's statements as well as her knowledge regarding the subject matter that her statements are associated with." R. at 36. The circuit court scheduled a period of limited discovery before the motion would be submitted.

A hearing occurred before the circuit court on February 14, 2025. At the hearing, counsel for Nguyen played video footage of investigative reports which had aired on WHAS11. Counsel asserted the segments had aired on October 17, 2023. The footage reported a hearing before the KBC where a group of nail salon owners, techs and educators proposed specific legislation they believed would address what they described as incidents of racism and injustice in the KBC's regulation and inspection conduct. The footage described incidents of licensees incurring what they perceived as excessive fines, difficulty with appealing the decisions of the KBC, and the arbitrariness of the Kentucky exam for nail technicians being offered only in English.

Also discussed at the hearing were local media reports concerning the Commonwealth Attorney's dismissal of charges against four women in connection with a cosmetology school who had been indicted by a Whitley County Grand Jury in 2022. These reports indicated prosecutors had dropped the charges following an investigation which had been led by the KBC rather than law enforcement, and that an inspector with the KBC, rather than local prosecutors, had presented the information to the Grand Jury.

No testimony occurred at the hearing and counsel acknowledged no discovery had been pursued by either party despite the circuit court designating a period for discovery to occur. And while some discussion relevant to Hunt's status

as either a private figure or public official occurred in the briefs of the parties, it occurred in the context of arguments concerning elements of a defamation claim outside of the applicable standard of liability. During the hearing on the motion to dismiss, some arguments before the circuit court touched upon the issue in a somewhat more direct manner. There, the primary focus of arguments was whether it could be established the statements in the social media posts could qualify as defamatory, or whether they were exclusively matters of pure opinion. Counsel for Hunt focused upon the allegation concerning the inappropriate use of company vehicles by members of KBC as one he contended Nguyen could not establish was a matter of pure opinion. Counsel for Nguyen, while arguing that a *prima facie* case for defamation had not been established, contended that Hunt was unable to establish that Nguyen had referenced Hunt in this statement. Counsel for Hunt asserted that Nguyen's argument was relevant, if at all, only in regard to what he asserted was a disputed issue of genuine material fact regarding Nguyen's mental state and went "directly to whether malice existed or not when she made those statements." (Video Record, 2/14/2025, 03:23:30–40.)

On March 17, 2025, the circuit court entered an Order ("Order", R. at 265–72) denying the motion to dismiss, concluding that, while the statements published by Nguyen:

> do indicate expressions of opinion, they are nonetheless

actionable defamatory communications because they both assert and imply undisclosed defamatory facts as a basis for the opinions. Furthermore, it is reasonable for the readers of the public posts where the statements were made to conclude the allegations of Defendant Nguyen were based on undisclosed facts. Thus, the statements as alleged fall under the mixed type under *Yancey* [*v. Hamilton*, 780 S.W.2d 854 (Ky. 1999).] Furthermore, the Court finds the above statements are sufficiently factual that they may be proven false, or they imply underlying facts which could be proven false, respectively.

Order, p. 7–8.

This appeal followed.

## ANALYSIS

On appeal, Nguyen argues that the circuit court erred by failing to recognize that she had established Hunt failed to state a *prima facie* case for defamation. She argues the statements in her social media post were pure opinion and absolutely privileged under the First Amendment. Additionally, she argues that Hunt was a public official when the statements were published and that he neither alleged nor established that she acted with actual malice.

Hunt argues that the circuit court should be affirmed. He contends the circuit court properly found the statements were provable as false and that the statements implied incomplete, incorrect, and erroneous facts. Furthermore, he argues that he did not carry the status of a public official and was not required to state a *prima facie* case for the element of actual malice. In the alternative, he

-9-

argues that even if he were considered a public official, his complaint sufficiently alleges actual malice.

We would prefer to begin straightway by noting the standards for review pursuant to UPEPA. However, both parties' briefs contain numerous deficiencies, so we must first "address, yet again, an attorney's failure to comply with rules of appellate procedure." *French v. French*, 581 S.W.3d 45, 47 (Ky. App. 2019).

RAP[2] 32(A)(4) provides in relevant part that the argument section of an appellant's opening brief "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Nguyen's opening brief does not contain any preservation statements, and her reply brief contains no attempt to remedy that mistake. "If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved." *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021).

Second, RAP 32(A)(3) and (4) require the statement of the case and argument sections of an appellant's opening brief to contain "ample references to the specific location in the record" where the brief's assertions may be located. The same requirements are imposed upon appellees in RAP 32(B)(3)–(4). Yet, the

---

[2] Kentucky Rules of Appellate Procedure.

briefs of neither Nguyen nor Hunt provide a single pinpoint citation to the trial court record.

Both parties cite to the respective appendices to their briefs. However, citing to an appendix is "not a substitute for the rule's requirement to cite only to the certified record on appeal." *J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 151 (Ky. App. 2024).

Third, an appendix to a party's brief must contain an index, which "shall set forth where each document may be found in the record." RAP 32(E)(1)(d). Neither party's index here sets forth where the matters contained therein may be located in the trial court record.

Consequently, we are faced with the question of whether we should ignore the briefing deficiencies or impose sanctions. When making that determination we must consider many factors, such as the number and type of deficiencies. *See, e.g.*, *Kentucky Farm Bureau Mutual Insurance Company v. Conley*, 456 S.W.3d 814, 818 (Ky. 2015) (noting that "the appropriate sanction for the violation of a rule is not automatic dismissal; rather, the penalty must be commensurate with the harm caused and the severity of the defect, as determined on a case-by-case basis").

Certainly, the deficiencies in the parties' briefs have hindered our ability to resolve this appeal expeditiously to some degree. "When counsel fail to

narrow focus to specific parts of a record . . . they unnecessarily tax already limited judicial resources." *J.P.T.*, 689 S.W.3d at 152. However, the record here is not excessively large or unwieldy. Furthermore, given this is a UPEPA appeal, the location of the parties' arguments to the circuit court is largely self-evident—they are contained in the parties' memoranda on the motion to dismiss pursuant to UPEPA and within the lone hearing which took place before the circuit court on that motion.

As mentioned above, Nguyen presents two primary arguments: first, that her statements were absolutely privileged under the First Amendment as pure opinion and second, that Hunt was a public official when her statements were published and that he failed to allege or establish that she had acted with actual malice when making the statements.

Upon our review of the record, it is arguable whether Nguyen presented the second argument precisely to the circuit court. Certainly, Nguyen argued explicitly and extensively that Hunt had failed to establish a *prima facie* case of defamation. And Hunt's status as a public or government official, as well as the matter concerning political speech on a matter of public concern, were referenced throughout the arguments of both parties to the circuit court. Nonetheless, Hunt has made no issue of the lack of clear preservation statements by Nguyen in his brief, nor does he assert anywhere that Nguyen failed to present

her second argument to the circuit court; he addresses this argument only as to its merits, as noted above and below.

A long-standing general rule is that an appellate court lacks jurisdiction to review issues not raised or considered before the trial court. *Fischer v. Fischer*, 348 S.W.3d 582, 588 (Ky. 2011), *abrogated on other grounds by Nami Res. Co., LLC v. Asher Land & Mineral, Ltd.*, 554 S.W.3d 323, 323 (Ky. 2018).

However, pursuant to CR[3] 61.02, we are authorized to review issues that were not sufficiently raised before a lower court for palpable error. CR 61.02 provides an avenue for relief to avoid manifest injustice resulting from an error that affected the substantial rights of the appealing party, even where an issue presented on appeal was not preserved. *Id.*; *see also Herndon v. Herndon*, 139 S.W.3d 822, 826 (Ky. 2004) ("CR 61.02 recognizes that a party's appellate rights may be circumscribed but maintains an avenue of relief by an appellate court even when the error may have been insufficiently raised or preserved for review.").

"A palpable error is 'easily perceptible, plain, obvious, and readily noticeable.'" *W.R.G. v. K.C.*, 673 S.W.3d 81, 84 (Ky. App. 2023) (quoting *Rice v. Rice*, 372 S.W.3d 449, 452 (Ky. App. 2012)) (citation omitted). Furthermore, a palpable error is one that "seriously affect[s] the fairness to a party if left uncorrected." *W.R.G.*, 673 S.W.3d at 84 (quoting *Hibdon v. Hibdon*, 247 S.W.3d

---

[3] Kentucky Rules of Civil Procedure.

915, 918 (Ky. App. 2007) (citation omitted). "Fundamentally, a palpable error determination turns on whether the [appellate] court believes there is a 'substantial possibility' that the result would have been different without the error." *Hibdon*, 247 S.W.3d at 918.

Nguyen's arguable failure to precisely bring this entire issue before the trial court certainly provided the court with little assistance in identifying the potential error in ignoring it. Furthermore, appellate courts "do not expect trial judges to detect and correct *sua sponte* every obscure and subtle error that escapes the attention of trial counsel." *Nami Res. Co., L.L.C.*, 554 S.W.3d at 338–39. However, Kentucky law has long recognized that, "[s]ince rendition of *New York Times* in 1964, it has been clear that the constitutional protection of political speech requires public officials who bring defamation lawsuits against critics of their official conduct to meet a higher standard of proof than ordinary citizens if they are to prevail." *Welch v. Am. Publ'g Co. of Kentucky*, 3 S.W.3d 724, 725–26 (Ky. 1999). And "[i]t is the function of the trial judge to determine whether [a defamation plaintiff] can be considered a public figure." *Yancey*, 786 S.W.2d at 859.

We are certainly sympathetic to the burden placed upon the circuit court, particularly where the parties have not explicitly directed the court's attention precisely to the inherent issues at play. Nonetheless, "[i]t is the duty of

courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Spevack v. Klein*, 385 U.S. 511, 515, 87 S. Ct. 625, 628, 17 L. Ed. 2d 574 (1967) (quoting *Boyd v. United States*, 116 U.S. 616, 635, 6 S. Ct. 524, 535, 29 L. Ed. 746 (1886)).

If Nguyen's second primary argument is correct, the issue she raises here doubtless affects her substantial rights. The issue does not simply involve her right to free speech pursuant the First Amendment. Rather, if her argument is correct, the issue concerns "political speech directed toward public officials[,]" which "is at the pinnacle of protected speech." *Welch*, 3 S.W.3d at 726.

Furthermore, if Nguyen's argument is correct, leaving the error uncorrected and requiring her to continue with litigation for the exercise of such a substantial right would seriously affect fairness to her. Moreover, it would be a disservice to the public at large. Even prior to the passage of UPEPA, Kentucky precedent has established that "Courts should resolve free speech litigation more expeditiously whenever possible" because "[t]he perpetuation of meritless actions, with their attendant costs, chills the exercise of press freedom." *Welch*, 3 S.W.3d at 729.

In sum, we conclude that, even if Nguyen failed to preserve her argument that Hunt failed to adequately establish a *prima facie* case that she had acted with actual malice, palpable error review is here appropriate. Furthermore,

we discern that, if her argument is correct, manifest injustice would result from affirming the circuit court's Order.

## STANDARD OF REVIEW

To review an appeal of a trial court's decision to grant or deny a motion filed under UPEPA, we apply the *de novo* standard of review. *Davenport Extreme Pools & Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 150 (Ky. App. 2024); *Andes Roofing, LLC v. Rusnak*, 726 S.W.3d 13, 17 (Ky. App. 2025). Accordingly, our review is "without deference to the interpretation afforded by the circuit court." *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998).

The circuit court was tasked with deciding a UPEPA motion to dismiss a defamation claim. As our courts have long recognized, however, the First Amendment to the United States Constitution places substantial limitations on state defamation law. The applicability of certain constitutional limitations is critical to the assessment of Hunt's defamation claim and the appropriate test for a lower court's determination of the viability of the claim under UPEPA. In turn, the applicability of constitutional limitations informs the precise standard by which we determine whether the trial court erred by denying Nguyen's motion to dismiss.

We will therefore begin by outlining the three-prong analysis of a UPEPA motion to dismiss, before turning to Kentucky and federal constitutional

-16-

law relevant to Hunt's claim for defamation, and the standard of judicial review that applies in this case.

## The Three-Prong Analysis of a UPEPA Motion to Dismiss

This Court first described the test for a court's determination of whether to grant or deny a motion to dismiss under UPEPA in *Davenport Extreme Pools*, 698 S.W.3d at 152. There, we stated:

> KRS 454.472 requires satisfaction of three prongs before granting the motion to dismiss. In the first two prongs, the moving party must establish that the cause of action arose during, or relates to, one of the three covered classes of communication, KRS 454.462(1)(a)–(c), and the non-moving party must fail to establish that one of the ten, exclusionary instances applies, KRS 454.462(2)(a).
>
> These first two prongs are simply classification prongs that do not alter or impair any vested rights. They merely ask the following question: Do the facts and the claims in this case fall under certain categories of free expression? Resolution of this question alters nothing about the claims before the Trial Court.
>
> The third and final prong regards the proof that the parties must demonstrate:
>
> > 1. The responding party fails to establish a prima facie case as to each essential element of the cause of action; or
> >
> > 2. The moving party establishes that:
> >
> > > a. The responding party failed to state a cause of action upon which relief can be granted; or

-17-

b. There is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the action.

KRS 454.472(1)(c)1.–2.

As before the circuit court, on appeal there is no dispute between the parties concerning the first prong under UPEPA in this case. The circuit court determined that the statements published by Nguyen addressed a matter of public concern, as defined in KRS 454.460(4),[4] and that consequently, pursuant to KRS 454.462(1)(c), Hunt's defamation claims were within the scope of UPEPA. We detect no error in the circuit court's conclusion that the defamation claims were within the scope of UPEPA pursuant to KRS 454.462(1)(c). We note, however, that the statements which were the subject of Hunt's claim were communications regarding issues then under consideration in legislative and administrative proceedings. Accordingly, the claims were also within the scope of UPEPA pursuant to KRS 454.462(1)(b).

Under the second prong, the circuit court determined that, contrary to Hunt's argument that one of the exclusionary instances excluded his claims from the application of UPEPA, he had not filed the claims while acting in his official

---

[4] KRS 454.460(4) defines a "matter of public concern" as "a statement or activity regarding" "[a] public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;" "[a] matter of political, social, or other interest to the community; or" "[a] subject of concern to the public[.]"

-18-

capacity to enforce a law to protect against an imminent threat to public health or safety. Accordingly, the circuit court determined that the exclusion in KRS 454.462(2)(a)2. did not preclude Nguyen from asserting UPEPA's protections. We discern no error as to the circuit court's conclusion that no exception within KRS 454.462(2)(a) excluded Hunt's claims from the scope of UPEPA. Additionally, we note that Hunt does not dispute the circuit court's analysis under the second prong of UPEPA, so we need not engage in any detailed analysis of this second prong.

We discern the central dispute in this appeal, and the dispositive issue in the case then, to be whether the circuit court erred in its determination that Hunt's defamation claim was not required to be dismissed under the third prong of the test under UPEPA. To resolve the issue, we must determine whether or not Hunt failed to establish a *prima facie* case as to each essential element of his defamation claim; as well as whether or not Nguyen established that Hunt failed to state a cause of action upon which relief can be granted; or that she established she was entitled to judgment as a matter of law on Hunt's defamation claim because there was no genuine issue as to any material fact. KRS 454.472(1)(c)1.–2.

Before proceeding with analysis of the issue, we must identify the relevant law.

### Kentucky and Federal Constitutional Law Relating to Hunt's Defamation Claim

The circuit court determined that in order for Hunt "[t]o establish a claim for defamation, the following elements must exist: '[l.] defamatory language, [2.] about the plaintiff, [3.] which is published, and which causes injury to reputation.' *Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. App. 2011), citing *Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004)." Order p. 3.

Subsequent to *Martin* and *Stringer*, our Supreme Court identified the requisite elements of a claim for defamation as follows:

> (a) a false and defamatory statement concerning another; (b) an unprivileged publication[] to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Toler v. Süd–Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (quoting RESTATEMENT (SECOND) OF TORTS § 558 (1977)) (footnotes omitted).[5] These elements require a defamation plaintiff to establish (a) falsity, (b) an unprivileged communication, (c) fault, and (d) damages.

---

[5] *Toler* overruled *Stringer*, "[t]o the extent that *Stringer* stands for a perpetuation of allowing the mere allegation of falsity to permit an inference of malice" in a defamation claim. 458 S.W.3d at 287.

The circuit court's analysis focused upon consideration of the arguments of the parties concerning the second element of a defamation claim, an unprivileged publication to a third party, as set forth in the RESTATEMENT (SECOND) OF TORTS § 558. As they had before the circuit court, the focus of the parties' arguments on appeal, like their arguments to the circuit court, is whether the statements at issue were pure opinion or mixed opinion. Statements of pure opinion are absolutely privileged under the First Amendment of the United States Constitution and, accordingly, are not actionable as defamatory statements. *Yancey*, 786 S.W.2d at 856–57; *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974). "A pure opinion statement is based upon facts that are disclosed or facts that are known or assumed by the parties to the statement." *Andes Roofing*, 726 S.W.3d at 20 (citing *Yancey*, 786 S.W.2d at 857; *Davenport Extreme Pools*, 698 S.W.3d at 157). On the other hand, a mixed opinion, despite having the appearance of "an opinion in form or context, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication." *Ramler v. Birkenhauer*, 684 S.W.3d 708, 719–20 (Ky. App. 2024) (quoting RESTATEMENT (SECOND) OF TORTS § 566, cmt. b (1977)). No First Amendment privilege attaches to an expression of mixed opinion, "if a listener draws a reasonable inference that the defendant's opinion must have been based on

undisclosed defamatory facts." *Ramler*, 684 S.W.3d at 720 (citing *Yancey*, 786 S.W.2d at 857).

The distinction has been the subject of this Court's analysis in prior appeals under UPEPA. *See Davenport Extreme Pools*, 698 S.W.3d at 157; *Andes Roofing*, 726 S.W.3d at 20.

However, the facts of this case invoke another consideration imposed by the First Amendment which serves to heighten the standard of liability for defamation lawsuits brought by public officials against critics of their official conduct. Such a defamation suit is subject to the actual malice standard, as announced by the United States Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). A defamatory statement about a public official or public figure is actionable only where it was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Welch*, 3 S.W.3d at 727 (citing *New York Times Co.*, 376 U.S. at 280, 84 S. Ct. at 726; *Warford v. Lexington Herald–Leader Co.*, 789 S.W.2d 758, 771 (Ky. 1990); *Sparks v. Boone*, 560 S.W.2d 236, 238 (Ky. App. 1977)).

The *New York Times* Court "intended to free criticism of public officials from the restraints imposed by the common law of defamation," and that "those who hold governmental office may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with

knowledge of its falsity or with reckless disregard for the truth." *Gertz*, 418 U.S. at 334, 342, 94 S. Ct. at 3004.

As alluded to above, the Kentucky Supreme Court has long recognized this heightened standard:

> An indispensable principle of free speech guaranteed by the First Amendment to the United States Constitution is "that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 271, 84 S. Ct. 710, 721, 11 L. Ed. 2d 686, 701 (1964). Accordingly, political speech directed toward public officials is at the pinnacle of protected speech. Since rendition of *New York Times* in 1964, it has been clear that the constitutional protection of political speech requires public officials who bring defamation lawsuits against critics of their official conduct to meet a higher standard of proof than ordinary citizens if they are to prevail.

*Welch*, 3 S.W.3d at 725–26.

The circuit court did not discuss whether Hunt's defamation claim was subject to the actual malice standard in its analysis. As he argued before the circuit court, Hunt argues on appeal that "even if a speaker discloses facts on which they base their opinion, the statement may nonetheless be defamatory if the disclosed facts are incomplete, incorrect, or if his assessment of them is erroneous. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2706, 111 L. Ed. 2d 1 (1990)."

-23-

However, where the statement concerns the conduct of a public official while carrying out official duties, examination of the degree of fault is necessary. The *New York Times* Court "recognized that erroneous statement is inevitable in free debate, and that it must be protected if the freedoms of expression are to have the breathing space that they need to survive." *Welch*, 3 S.W.3d at 727, (citing *New York Times*, 376 U.S. at 271–72, 84 S. Ct. at 721–22) (internal quotation marks omitted).

Where a plaintiff is a private figure, the requisite standard of liability in a defamation claim is only simple negligence. *McCall v. Courier–J. & Louisville Times Co.*, 623 S.W.2d 882, 886 (Ky. 1981). It is axiomatic, however, that actual malice entails more than mere negligence. *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323, 1325, 20 L. Ed. 2d 262, 267 (1968). To establish malice, the plaintiff must establish that the publisher of the allegedly defamatory statements has at least "entertained serious doubts" as to the truth of the published matter. *Warford*, 789 S.W.2d at 771 (citing *Harte–Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667, 109 S. Ct. 2678, 2685, 105 L. Ed. 2d 562 (1989)).

Accordingly, if Hunt was a private figure at the time he was allegedly defamed, the *New York Times* standard does not apply. To establish fault under Kentucky law, Hunt would be required to make a *prima facie* showing only that

Nguyen negligently posted the allegedly defamatory statements. On the other hand, if Hunt—as General Counsel for the KBC—was a public official and Nguyen's allegedly defamatory social media posts related to his official conduct, the more stringent constitutional standard applies.

## Hunt Qualifies as a Public Official

*New York Times* held that the libel plaintiff's position as an elected city commissioner clearly made him a "public official"; however, the Supreme Court declined at that time to "determine how far down into the lower ranks of government employees the 'public official' designation would extend for purposes of [the constitutional actual malice standard], or otherwise to specify categories of persons who would or would not be included." 376 U.S. at 283 n.23, 84 S. Ct. at 727 n.23.

In *Rosenblatt v. Baer*, 383 U.S. 75, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966), the Court first established a test for the determination of whether a plaintiff qualifies as a "public official" for the purpose of applying the actual malice standard. Explaining the test must reflect the dual elements which prompted the *New York Times* decision, the *Rosenblatt* Court stated:

> There is, first, a strong interest in debate on public issues, and, second, a strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues. Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for

> government operations must be free, lest criticism of government itself be penalized.  It is clear, therefore, that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.

383 U.S. at 85, 86 S. Ct. at 675–76.

The *Rosenblatt* Court determined that both elements were applicable, and the actual malice standard would apply, "[w]here a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees[.]"  383 U.S. at 86, 86 S. Ct. at 676.  The Court emphasized that a government employee does not attain the status of public official by attracting public interest through mere happenstance; rather, "[t]he employee's position must be one which would invite public scrutiny[y] and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy."  *Id*. at 86 n.13, 86 S. Ct. at 676 n.13.

The circuit court made no determination in the Order as to whether Hunt was a public official.  The circuit court erred by failing to make this determination.  "It is the function of the trial judge to determine whether [plaintiff] can be considered a public figure."  *Yancey*, 786 S.W.2d at 859 (citing *Logan v.*

*District of Columbia*, 447 F. Supp. 1328, 1331 (D.D.C. 1978); *Rosenblatt*, 383

U.S. at 88, 86 S. Ct. at 677).  Consequently, the Order did not identify the degree

of fault required to establish a *prima facie* case of defamation, nor did it determine

that fault was an essential element in the cause of action.

In an affidavit Hunt submitted to the circuit court which is included in

the appendix to his Appellee brief, he stated that, in his role as General Counsel for

the KBC, he "provided legal advice to the appointed board members in their

official capacities and represented the KBC in enforcement actions related to

licensing and health/safety investigations."

Under the test announced in *Rosenblatt*, as General Counsel for the

KBC, Hunt held substantial responsibility for the conduct of government affairs,

namely in conducting the enforcement actions related to licensing and health/safety

investigations.  Perhaps more so, the position of General Counsel for the KBC, at

the time of Nguyen's social media posts, held substantial responsibility in

rendering legal advice regarding the criminal prosecutions that were then within

the purview of the KBC.  *Rosenblatt*, 383 U.S. at 85, 86 S. Ct. at 675–76.  The

public would certainly have an independent interest in the qualifications and

performance of the person holding such an office, beyond the general interest in

the qualifications and performance of all government employees.  *Id*. at 86, 86 S.

Ct. at 676.

At the time Nguyen published the allegedly defamatory statements, pursuant to KRS 317A.020(7)(c), the KBC held the statutory authority to "[i]nstitute . . . criminal proceedings against violators of" KRS Chapter 317A.

In an affidavit submitted to the circuit court and included in the appendix to his Appellee brief, Hunt stated that, in his role as General Counsel for the KBC, he "took no action to initiate any criminal case against any of the licensees mentioned in the Defendants' motion. My only involvement was to attempt to keep apprised of the criminal case, as the administrative hearing process was held in abeyance at the request of Jessica Musselman while the criminal case was pending." R. at 172. Even accepting as true Hunt's affidavit, and assuming he never *initiated* any criminal case against any cosmetology licensees, Hunt's responsibility to render legal advice to the inspectors or other KBC members who conducted such criminal cases was nonetheless substantial and of considerable interest to the public.

After all, our Supreme Court has previously deemed a Commonwealth attorney a public official. *Ball v. E.W. Scripps Co.*, 801 S.W.2d 684, 685 (Ky. 1990). Given the statutory authority to institute criminal actions against cosmetology licensees whom the KBC determined were in violation, we view the position of General Counsel for the board, at the time Nguyen published her social media posts, to have been sufficiently analogous to a Commonwealth attorney to

-28-

be "one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny[y] and discussion occasioned by the particular charges in controversy." *Rosenblatt*, 383 U.S. at 86, 86 S. Ct. at 676.[6]

Furthermore, under the requirement set forth in *New York Times*, the statements in Nguyen's social media posts "relat[ed] to [Hunt's] official conduct," 376 U.S. at 279, 84 S. Ct. at 725, because the statements alleged that Hunt, as General Counsel for the KBC, improperly denied hearings, improperly refused to produce records pursuant to an open records request, lied to decision makers regarding licensees, and wrote fraudulent allegations to support findings of violations.

Under these circumstances, Hunt was a public official at the time Nguyen published the allegedly defamatory statements, which clearly related to his official conduct, and the *New York Times* actual malice standard applies to his defamation claim. *See Garrison v. Louisiana*, 379 U.S. 64, 77, 85 S. Ct. 209, 13

---

[6] We note here that Ball was deemed a public figure by our state Supreme Court in the context of application of federal First Amendment precedent. 801 S.W.2d at 688–90. *Rosenblatt* was clear that the question of whether a party is a "public official" under the *New York Times* is controlled by United States Supreme Court precedent rather than by reference to state-law standards. 383 U.S. at 84, 86 S. Ct. at 675. For this reason, we do not look to Kentucky precedent examining whether a party is a "public official" for state administrative purposes. *See id.* ("States have developed definitions of 'public official' for local administrative purposes, not the purposes of a national constitutional protection."). Accordingly, determinations of who might qualify as a "public official" for administrative purposes, such as our state Supreme Court's recent examination of whether "public records" were held by a "public agency" for purposes of Kentucky's Open Records Act, have not factored into our analysis. *Kentucky Dep't of Fish & Wildlife Res. Comm'n v. Kentucky Open Gov't Coal., Inc.*, No. 2023-SC-0524-DG, 2026 WL 1108344, at *1 (Ky. Apr. 23, 2026).

L. Ed. 2d 125 (1964) (explaining that because the *New York Times* test "protects the paramount public interest in a free flow of information to the people concerning public officials, their servants . . . , anything which might touch on an official's fitness for office is relevant. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character."); *Gertz*, 418 U.S. at 344, 94 S. Ct. at 3009 (explaining that "[a]n individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs" and "runs the risk of closer public scrutiny than might otherwise be the case.").

## The Circuit Court Erred in the Application of Judicial Review

In *Davenport Extreme Pools*, we pointed out that "the UPEPA is most akin to an expedited motion to dismiss for failure to state a claim upon which relief may be granted *or* a motion for summary judgment." 698 S.W.3d at 150 (emphasis added).

The circuit court indicated that it utilized the standard of review utilized in a motion to dismiss for failure to state a claim, citing to *Pari–Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL–CIO v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977) ("The court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts

which could be proved in support of his claim."). Furthermore, the circuit court indicated that all material allegations in Hunt's complaint had been taken as true, pursuant to *Shrout v. TFE Group*, 161 S.W.3d 351 (Ky. App. 2005).

However, the standard for judicial review of a motion for summary judgment is distinct from the standard for resolution of a motion for failure to state a claim upon which relief may be granted. A bare allegation in a complaint is insufficient to survive a motion for summary judgment if "as a matter of law, it appears that it would be impossible for the respondent *to produce evidence at the trial warranting a judgment in his favor* and against the movant." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (emphasis added).

To determine a motion for summary judgment then, a court must often look beyond the initiating complaint:

> Before the circuit court, "[t]he moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present" evidence establishing a triable issue of material fact. *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001). That is, "[t]he party opposing a properly presented summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing the existence of a genuine issue of material fact for trial." *City of Florence, Kentucky v. Chipman*, 38 S.W.3d 387, 390 (Ky. 2001).

*Fortney v. Guzman*, 482 S.W.3d 784, 788–89 (Ky. App. 2015).

This approach is fully consistent with UPEPA, which requires that "[i]n ruling on a motion under KRS 454.464, the court *shall* consider the pleadings, the motion, any reply or response to the motion, and any evidence that could be considered in ruling on a motion for summary judgment."  KRS 454.470 (emphasis added).  Moreover, application of the Kentucky standard for summary judgment is fully consistent with the United States Supreme Court's direction as to how a court should view the evidence in deciding a summary judgment motion in a case involving a defamation claim by a public figure.

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).

Furthermore, while the circuit court should construe the evidence in this light, the court must also take into account the heightened standard of "clear and convincing" proof applicable to a defamation case brought by a public official.

> Just as the "convincing clarity" requirement is relevant in ruling on a motion for directed verdict, it is relevant in ruling on a motion for summary judgment.  When determining if a genuine factual issue as to actual malice exists in a libel suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality

-32-

> of proof necessary to support liability under *New York Times*. For example, there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence.

*Id.* at 254, 106 S. Ct. at 2513.

There are likewise implications for this Court's appropriate standard of review, where the motion is akin to a motion for summary judgment. Where the party opposing the motion for summary judgment had an ample opportunity to respond to and complete discovery, Kentucky law requires a reviewing court to determine whether that party still failed to introduce evidence sufficient to establish an essential element of the cause of action. *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010).

Furthermore, the United States Supreme Court has instructed that in determining whether a public-figure plaintiff has proven actual malice by clear and convincing evidence, the reviewing court must conduct "an independent examination of the whole record" to ensure that "the judgment does not constitute a forbidden intrusion on the field of free expression." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499, 104 S. Ct. 1949, 1958, 80 L. Ed. 2d 502 (1984) (citing *New York Times*, 376 U.S. at 284–86, 84 S. Ct. at 728–29).

The Sixth Circuit has followed this direction at the summary judgment stage of public-figure defamation cases. *Compuware Corp. v. Moody's Investors*

*Services, Inc.*, 499 F.3d 520, 525–26 (6th Cir. 2007) (reviewing *de novo* the trial court's grant of summary judgment on a defamation claim brought by a public figure plaintiff that failed to produce sufficient evidence of actual malice, while noting that the court must "make an independent examination of the whole record" and viewing "the evidence, all facts, and any inferences in the light most favorable to the nonmoving party") (citation and punctuation omitted). This Court is compelled to follow these same principles in order to ensure that "the judgment does not constitute a forbidden intrusion on the field of free expression." *Bose*, 466 U.S. at 499, 104 S. Ct. at 1958 (citation omitted).

We will review *de novo* the trial court's denial of Nguyen's motion to dismiss Hunt's public-official defamation claim, construing the pleadings, affidavits, and any evidence that could be considered in ruling on a motion for summary judgment with all justifiable inferences drawn therefrom in the light most favorable to Hunt as the non-moving party. But we will independently review the whole record as to the issue of actual malice to determine whether the evidence satisfies the standard of clear and convincing evidence of actual knowledge or reckless disregard that the disputed statements were false.

### Based on the Record Before the Circuit Court, Hunt Failed to Make a *Prima Facie* Showing for the Essential Element of Actual Malice

Utilizing the above principles, we turn to whether Hunt established a *prima facie* case as to each essential element of his defamation claim under the

third prong of the UPEPA test. *See* KRS 454.472(1)(c)1.–2.; *Davenport Extreme Pools*, 698 S.W.3d at 152.

Because we have determined that Hunt was a public official at the time Nguyen published the allegedly defamatory social media posts, the *New York Times* constitutional standard applies in this case rather than the Kentucky common law fault standard applied by the circuit court. Furthermore, we look beyond the bare assertions in Hunt's complaint. And, putting aside other elements, to prevail on his defamation claim, Hunt must establish a *prima facie* case that he would be able to prove by clear and convincing evidence that Nguyen published the social media posts with actual malice. *New York Times*, 376 U.S. at 279–80, 84 S. Ct. at 726. The inquiry at this juncture does not require a venture into unchartered territory under Kentucky law. As our Supreme Court has previously recognized:

> Actual malice entails more than mere negligence. *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323, 1325, 20 L. Ed. 2d 262, 267 (1968). It requires that the publisher of the defamatory falsehood have "entertained serious doubts" as to the truth of the published matter. *Warford* at 771 (quoting *Harte–Hanks*, 491 U.S. 657, 667, 109 S. Ct. 2678, 2685, 105 L. Ed. 2d 562, 576 (1989)). This higher proof requirement for public figures is based upon the premise that unfettered political discussion is a necessary and fundamental principle of our constitutional system of government, assuring that political decisions will be made through persuasion rather than power. *New York Times*, 376 U.S. at 269–270, 84 S. Ct. at [720–21], 11 L. Ed. 2d at 700–701. The standard of proof is similarly high, as actual malice must be shown by clear and convincing evidence.

-35-

> *Warford* at 771; *New York Times*, 376 U.S. at 285–286,
> 84 S. Ct. at 728–729, 11 L. Ed. 2d at 709–710.

*Welch*, 3 S.W.3d at 727–28.

We have conducted an independent examination of the whole record solely to resolve "whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law [.]" *Harte–Hanks*, 491 U.S. at 685, 109 S. Ct. at 2694. We recognize that, necessarily, "[t]he standard is a subjective one—there must be sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of . . . probable falsity.'" *Harte–Hanks*, 491 U.S. at 688, 109 S. Ct. at 2694 (quoting *Garrison*, 379 U.S. at 74, 85 S. Ct. at 216). While evidence of reckless publication would be sufficient, that standard remains an inherently difficult one for Hunt to meet, as "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731, 88 S. Ct. at 1325. Based on the record on appeal and considering the arguments of the parties, it is clear Hunt failed to satisfy this stringent standard.

Hunt contends that his "Complaint sufficiently alleges that Appellant acted with actual malice" as it "expressly asserts that Nguyen knowingly made false, defamatory, and defamatory per se statements." Appellee brief, p. 12.

However, as stated above, the bare allegation of fact in a complaint is insufficient to establish a *prima facie* case for this essential element. Our Supreme Court has made clear that, "in the context of a claim of qualified privilege to make otherwise defamatory remarks, the mere allegation of falsity is [not] sufficient to permit an inference of malice." *Doe v. Coleman*, 497 S.W.3d 740, 749 (Ky. 2016) (citing *Toler*, 458 S.W.3d at 287) (internal quotation marks omitted). Likewise, a mere allegation of malice is insufficient: "like falsity," malice "must be shown." *Id.*

Hunt argues that malice may be inferred from the circumstances of the case, and that Nguyen should have investigated the allegations prior to publishing the social media posts. Citing to *Warford*, 789 S.W.2d at 772, Hunt argues that Nguyen's knowledge of his occupation as an attorney should have prompted heightened investigation of the allegation in the Facebook posts as Nguyen should have realized "how detrimental claims of fraud, abuse, and criminal culpability would be for his reputation and career." Appellee brief, p. 13.

Failure to investigate before publishing may be "probative of malice when viewed cumulatively with other the evidence presented by appellant." *Warford*, 789 S.W.2d at 772. However, "courts must be careful not to place too much reliance on [circumstantial evidence of the defendant's state of mind]." *Harte–Hanks*, 491 U.S. at 668, 109 S. Ct. at 2686.

In *Welch*, the defendant similarly argued "that *Warford v. Lexington Herald–Leader*, [789 S.W.2d 758, 772 (Ky. 1990)], supports the proposition that the failure to investigate an ad's veracity prior to publication alone is probative of actual malice." 3 S.W.3d at 728. However, the *Welch* Court went on to examine *Warford* and detailed why that opinion did not support such a broad proposition:

> *Warford* involved an investigative news story that alleged that Warford, an assistant coach at the University of Pittsburgh, offered a high school basketball player money in an effort to induce him to attend the University of Pittsburgh. 789 S.W.2d at 760. Although the high school recruit later retracted the allegation, the retraction was not mentioned when the story was reprinted. *Id*. Moreover, despite knowledge of other sources that might have verified or contradicted the recruit's initial allegations, the reporter failed to contact the other sources. *Id*. at 772. This Court held that the failure to investigate before publishing was not alone sufficient to establish reckless disregard, but could be probative of whether there was actual malice when viewed cumulatively with other evidence. *Id*. However, *Warford* is distinguishable from the case at bar as well as from *New York Times* because it involved an investigative news story rather than a political ad. This distinction is far from insignificant, because an investigative news story is the creation of newspaper employees, and it bears the newspaper's imprimatur. Thus, we view *New York Times* rather than *Warford* as decisive in deciding the instant case.

*Welch*, 3 S.W.3d at 728–29.

We discern the nature of Nguyen's social media posts as more analogous to a political ad than to the investigative report published in *Warford*.

-38-

Furthermore, as evidenced in the above quotation, *Warford* discussed much other circumstantial evidence from which a knowledge of probable falsity could be inferred. Moreover, in *Warford*, the Appellees *admitted* they were aware of the gravity of the charge and potential harm to appellant. 789 S.W.2d at 772 ("The defamatory publication was sent to all of his possible future employers in college basketball. This knowledge of potential harm should have heightened appellees' investigative efforts. The fact that it did not may be considered as evidence of malice.").

Hunt points to no similar admission by Nguyen, neither does he point to any circumstance similar to "the defamatory publication [being] sent to all of his possible future employers[.]" *Id.*

It is noteworthy that Hunt requested an opportunity to conduct limited discovery and contended it was "necessary to determine the contents of Defendant Nguyen's statements as well as her knowledge regarding the subject matter that her statements are associated with." R. at 36. The circuit court granted this request but Hunt, apparently, did not avail himself of the opportunity. *See Davenport Extreme Pools*, 698 S.W.3d at 157 ("Davenport needed more evidence to make its case, and Davenport could have and should have utilized the limited discovery provisions to make *prima facie* cases of the . . . claims.").

Furthermore, the pleadings and affidavit submitted by Hunt show that at the time Nguyen published the Facebook post, there was considerable discussion among members of the professions regulated by the KBC complaining as to its actions and seeking legislative reform. Significantly, Hunt's pleadings essentially concede that the allegations in Nguyen's posts did not come out of the blue. Rather, the allegations were generally consistent with allegations by other members of the cosmetology profession being publicized in local media. Nonetheless, Hunt did not concede those contemporaneous allegations were part of the broader context of Nguyen's Facebook posts in his arguments before the circuit court or in his briefing here. Notably, when Nguyen's Facebook posts were published, Hunt had not yet filed in this case his affidavit containing sworn denials to some of the allegedly defamatory statements. Nor did Hunt present any other evidence indicating the statements in Nguyen's posts were inaccurate.

In short, we are unpersuaded that Hunt's profession as an attorney should have put Nguyen on notice that the allegedly defamatory statements required heightened investigation. Neither are we persuaded that knowledge of his profession provides circumstantial evidence that Nguyen subjectively had a high degree of awareness of probable falsity of the allegedly defamatory statements.

In sum, the defamation case pleadings and affidavits do not clearly and convincingly establish that at the time the post was published, Nguyen was subjectively aware of probable falsity of the allegedly defamatory statements.

The United States Supreme Court has made clear that a publisher's "[f]ailure to investigate does not in itself establish bad faith." *St. Amant*, 390 U.S. at 733, 88 S. Ct. at 1326. *See also Gertz*, 418 U.S. at 332, 94 S. Ct. at 3003. Nor is the standard whether a "reasonably prudent person" would have investigated before publishing, *Harte–Hanks*, 491 U.S. at 688, 109 S. Ct. at 2696. Instead, there must be a showing by clear and convincing evidence that the defendant "purposeful[ly] avoid[ed]" investigation with the intent of avoiding discovery of the truth. *Id*. at 692–93, 109 S. Ct. at 2698–99.

In *New York Times*, the Supreme Court held that the Times' failure to check the accuracy of false statements it had published in an advertisement against the news stories in the Times' own files supported "at most a finding of negligence in failing to discover the misstatements, and [was] constitutionally insufficient to show the recklessness that is required for a finding of actual malice." 376 U.S. at 288, 84 S. Ct. at 730.

Here, the existing record shows that the statements in Nguyen's social media post had previously appeared in the Change.org petition that Nguyen reposted. Republication is not a defense to defamation. *Warford*, 789 S.W.2d at

772.  Nonetheless, as to the element of malice, Hunt provides no clear evidence of any obvious reason Nguyen had to doubt those allegations before reposting them.

The republication by Nguyen might be said to be imprudent. Nonetheless, the pleadings and affidavits do not establish a *prima facie* case that Nguyen's failure to investigate the allegations evinced a deliberate intent to avoid discovery of the truth.  *See New York Times*, 376 U.S. at 287–88, 84 S. Ct. at 730; *St. Amant*, 390 U.S. at 732–33, 88 S. Ct. at 1326.

Based on our independent review of the entire existing record of defamation case pleadings and affidavits, viewed in a light favorable to Hunt, we conclude that he could not show by clear and convincing evidence that Nguyen actually disbelieved or subjectively entertained serious doubts about the truth of the disputed statements in her social media post.  Accordingly, Hunt did not establish a *prima facie* case as to each essential element of his defamation claim under the third prong of the UPEPA test.  Nor do we discern any genuine issue as to any material fact that would indicate that Nguyen was not entitled to judgment as a matter of law on the cause of action of defamation.  Furthermore, we conclude that failure to evaluate whether Hunt had established a *prima facie* case as to the essential element of fault was an instance of palpable error which affected Nguyen's Constitutional right to engage in political speech directed toward a

government public official.  Consequently, we must reverse the circuit court's denial of Nguyen's motion to dismiss Hunt's complaint pursuant to UPEPA.

We have concluded that any arguments in the parties' briefs not discussed herein are redundant, irrelevant, or otherwise unnecessary to discuss in order to properly resolve this appeal.

## CONCLUSION

For the foregoing reasons, the order of the Boone Circuit Court is reversed, and this matter is remanded for dismissal pursuant to UPEPA.

MOYNAHAN, JUDGE, CONCURS.

MCNEILL, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

MCNEILL, JUDGE, DISSENTING:  I respectfully dissent because I do not believe that we should address the merits of the dispositive legal issue upon which the Majority reverses the circuit court.  More precisely, I believe that it is unnecessary to first determine Hunt's status as a public figure, and then further determine actual malice—whether the presence or absence thereof.

The Majority states that "[d]espite the arguments of the parties, the circuit court did not determine whether Hunt was a public official in the Order. The circuit court erred by failing to make this determination."  Slip Op. at 20. However, Appellants omit any statement of preservation on this, or any other issue, on appeal.  *See* RAP 32(A)(4).  Rather, this allegedly dispositive matter is confined

to the final several pages at the end of their brief wherein Appellants provide a passing reference to "actual malice" and two quotations from *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).

Further, this issue is not addressed in Appellants' motion to dismiss or memorandum in support thereof. Unsurprisingly, it is not addressed in the court's order denying the motion. There is no indication that Appellants sought clarification or reconsideration pursuant to CR 52.04 or CR 59.05.

Although the Majority indicates that this issue was raised before the circuit court, to the extent that it was limited to some discussion at an oral hearing, I believe that more is required. The moving party bears the burden to raise and thoroughly address the issues to be decided by the trial court in any dispositive motion. Moreover, application of the substantive law of defamation and the First Amendment requires more than a passing reference by the party seeking to avoid the former by cloaking itself in the protection of the latter. These concerns become more acute in the context of UPEPA's statutory framework which we have previously explained:

> is procedural or remedial in nature. It permits parties an accelerated procedure for using established, substantive defenses to dismiss non-meritorious claims. It grants plaintiffs limited discovery to make *prima facie* showings of the elements of their claims. No pre-existing rights of recovery are abolished or restricted. Accordingly, the UPEPA statutes do not violate the jural rights doctrine.

*Davenport Extreme Pools & Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 154 (Ky. App. 2024). While not abolishing a common law right of recovery, improper application of the UPEPA transforms procedure into substance, and at the expense of clearing one's name when faced with potentially scurrilous publications.

To be clear, I agree that Hunt's potential public figure status is an important issue. Accordingly, it is one best suited for first decision by the circuit court. That did not occur here. And while it is well-settled that an appellate court may affirm a lower court for any reason supported by the record, I discern no similar admonition for reversal. *See, e.g.*, *Kentucky Farm Bureau Mutual Insurance Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991).

Yet, despite Appellants' absence of preservation or persuasion at any stage of the present litigation, the Majority undertakes to "independently review the whole record as to the issue of actual malice to determine whether the evidence satisfies the standard of clear and convincing evidence of actual knowledge or reckless disregard that the disputed statements were false." Slip Op. at 27. This blurs the lines between *de novo* and *sua sponte*. On the contrary, I believe it is most appropriate to remand for the circuit court's consideration of the First Amendment concerns at issue here. Therefore, I respectfully dissent.

BRIEFS FOR APPELLANTS:

Reginald L. Thomas
Lexington, Kentucky

BRIEF FOR APPELLEE:

Sebastian D. Torres
Union, Kentucky